UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ARTHUR JOSEPH HIBBARD,

        Plaintiff,          Case No. 2:15-cv-52

v.          HON. R. ALLAN EDGAR

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

## **OPINION & ORDER**

Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act on October 27, 2011. ECF No. 7-2 at 10. Plaintiff alleges that he became disabled on April 1, 2011. ECF No. 7-2 at 10. On February 7, 2012, Plaintiff's application was denied, and on March 26, 2012, Plaintiff filed a written request for an administrative hearing before an Administrative Law Judge (ALJ). ECF No. 7-2 at 10. The ALJ held a video hearing on August 23, 2013. ECF No. 7-2 at 10. At the hearing, Plaintiff was represented by counsel. ECF No. 7-2 at 27. Testifying at the hearing were Plaintiff and vocational expert William Dingess. ECF No. 7-2 at 10, 26. In a decision issued September 20, 2013, the ALJ denied Plaintiff's claim for benefits. ECF No. 7-2 at 10, 19. Plaintiff appealed to the Appeals Council, which denied his request for review on February 3, 2015. ECF No. 7-2 at 2. Plaintiff then filed this action on March 30, 2015. ECF No. 1.

Plaintiff suffers from a back impairment and neurofibromatosis. ECF No. 7-2 at 12, 31, 50-51. Plaintiff has an eighth grade education and worked as a woodworking shop

laborer for sixteen years. ECF No. 7-2 at 31, 37-39, 52. Plaintiff testified that he has a hard time retaining information, and gets easily confused. ECF No. 7-2 at 42. He had surgery on his back, which made his back "better to a point." ECF No. 7-2 at 45. Plaintiff used to go four-wheeling and hunting, and he would cut his own firewood. ECF No. 7-2 at 46. He testified that he can still mow the lawn for fifteen to twenty minutes at a time and do the laundry. ECF No. 7-2 at 46-47.

Vocational expert William Dingess testified at the hearing and was asked to evaluate Plaintiff's ability to perform his past relevant work based on several different hypotheticals. The first hypothetical scenario asked whether a person of Plaintiff's age, education, and skills that had the following limitations would be able to perform any job at the light level: no more than frequent climbing of ramps and stairs; occasional climbing of ladders, ropes, and scaffolds; and frequent balancing, scooping, crouching, kneeling, and occasional crawling. ECF No. 7-2 at 55-56. Mr. Dingess noted that this hypothetical person would not be able to perform Plaintiff's past relevant work, but would be able to do the following light level jobs: cashier (2.2 million jobs nationally), housekeeper or cleaner (1.49 million nationally), assembler (936,000 nationally), and hand packer (455,000 nationally). ECF No. 7-2 at 56. In the second hypothetical, the ALJ asked if changing the conditions of "occasional climbing of ramps or stairs, no climbing ladders or scaffolds," to only occasional scooping, crouching, kneeling, and crawling would affect the jobs available to the hypothetical person. ECF No. 7-2 at 56. Mr. Dingess testified that the same jobs would be available to this type of person as mentioned in the first hypothetical. ECF No. 7-2 at 56. In the third scenario, the ALJ asked if there would be jobs available for the previously described person if he was also limited to sedentary work. ECF No.

7-2 at 56-57 (continuing the conditions of no climbing ladders or scaffolds).  Mr. Dingess testified that for such a sedentary person, there would be jobs available as: an assembler (156,000 nationally); an industrial instructor (34,800 nationally); an order clerk (122,000 nationally); and a cashier (285,000 nationally).  ECF No. 7-2 at 57.  In the fourth hypothetical, the ALJ asked whether a person that was limited to being able to sit or stand alternatively at will, as long as they were not off-task more than ten percent of the work period, would have any jobs available to him.  ECF No. 7-2 at 57.  Mr. Dingess noted that the job availabilities to this person would be the same as those available to the person in the third hypothetical.  ECF No. 7-2 at 57. In the fifth question, the ALJ asked whether a person with a combination of medical conditions, associated pain, possible mental impairments, and an inability to engage in sustained work activities on a regular and sustained basis of eight hours a day, five days a week (or a forty hour work week), would have any unskilled and repetitive jobs available to him.  ECF No. 7-2 at 58.  Mr. Dingess said there would not be competitive work for this individual. ECF No. 7-2 at 58.  Finally, the ALJ asked whether a person that took more than two fifteen minute breaks, a thirty minute lunch, and two absences per month regularly would have any competitive employment opportunities.  ECF No. 7-2 at 58-59.  Mr. Dingess said there would be not be any positions available for this person either.  ECF No. 7-2 at 59.

  Plaintiff's attorney then asked Mr. Dingess whether a person of Plaintiff's age, education, and work experience that had the following limitations would have positions available to him: limited to working four hours a day at the sedentary level with a sit-stand option.  ECF No. 7-2 at 59-60.  Mr. Dingess said there would be no full-time work available for this person. ECF No. 7-2 at 60.

The ALJ determined Plaintiff suffers from a disorder of the back status post laminectomy and fusion at L5-S1.  ECF No. 7-2 at 12. Based on this condition and the ALJ's determination of Plaintiff's physical capabilities, the ALJ concluded that Plaintiff could perform work as a cashier, housekeeper or cleaner, assembler, or a hand picker. ECF No. 7-2 at 19.

Plaintiff filed an appeal on March 30, 2015 (ECF No. 1), alleging that the ALJ committed reversible errors.  ECF No. 11 at 17-21. Defendant Commissioner of Social Security filed a response on August 14, 2015.  ECF No. 12.  Plaintiff filed a reply on September 8, 2015.  ECF No. 13.  The matter is now ready for a decision.

I.

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The findings of the ALJ are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991); *see also Miller v. Comm'r of Soc. Sec.*, No. 15-1405, 2016 WL 362423, at *4 (6th Cir. 2016) (noting more than a mere scintilla of evidence is needed, but less than a preponderance).  This Court is not permitted to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision

cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion).  This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently.  *See Kinsella v. Schwikers*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  If the ALJ determines Plaintiff is or is not disabled under a step, the analysis ceases and Plaintiff is declared as such.  20 C.F.R. § 404.1520(a).  Steps four and five use the residual functional capacity assessment in evaluating the claim.  *Id.*

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2011, the alleged onset date.  ECF No. 7-2 at 12; *see* 20 C.F.R. § 404.1520(b).  At step two, the ALJ determined Plaintiff has the following severe impairments: disorder of the back status post laminectomy and fusion at L5-S1.  ECF No. 7-2 at 12.  At step three, the ALJ determined Plaintiff's impairments or a combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1.  ECF No. 7-2 at 13-14.  At step four, the ALJ determined Plaintiff has the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R.§ 404.1567(b), with the additional limitations of: no more than frequent balancing, stooping, crouching, kneeling, or climbing of ramps or stairs; and occasional crawling or climbing of ladders, ropes, or scaffolds.

ECF No. 7-2 at 14-18. At step five, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff can perform, such as: a cashier (2.2 million jobs nationally), a housekeeper or cleaner (1.49 million jobs nationally), an assembler (936,000 nationally), and a hand picker (455,000 nationally). ECF No. 7-2 at 18-19. Therefore, the ALJ held that Plaintiff was not disabled during the time period from his alleged onset date through his date last insured. ECF No. 7-2 at 19.

## II.

Plaintiff's initial brief alleges that the ALJ committed reversible error by not finding that Plaintiff met Medical Listing 12.05C, by wrongly weighing the evidence and by failing to properly consider the opinion of Plaintiff's treating neurosurgeon and of the RFC study and IQ testing in this case, and by failing to give proper credit to allegedly unacceptable medical sources. ECF No. 11 at 17-21. Upon review of the evidence of record, the Court affirms the ALJ's conclusions.

### A. Medical Listing 12.05C

Plaintiff claims that the ALJ erred at Step Three by finding that he did not meet or medically equal the requirements of Listing 12.05C (for mental retardation). Under Step Three of the five-step sequential evaluation process, the ALJ determines whether the claimant "is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations," at which time the claimant would be found disabled without having to consider vocational factors. *Newsome v. Comm'r of Soc. Sec.*, 528 F. Supp. 2d 733, 738 (W.D. Mich. 2007) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 538 (6th Cir. 2007)). To satisfy Listing 12.05C, Plaintiff had

to show that he suffers from a "'significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e. before age 22' *and* that he meets any one of the four criteria A through D in that Listing." *Newsome*, at 738. Plaintiff bears the burden of demonstrating that he meets or medically equals one of the Listings. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.").

There is substantial evidence to support the ALJ's decision that Plaintiff did not have sufficiently sub-average intellectual functioning with adaptive functioning deficits before age twenty-two as required for a finding under Listing 12.05C. *See Foster*, 279 F.3d at 354-55. In his decision, the ALJ stated the following regarding Plaintiff's mental health:

> In the alternative, the undersigned considered the claimant's alleged learning disorder under pertinent listing 12.05. First, the learning disorder does not satisfy paragraph A, as the claimant is independent in caring for his personal needs and was able to follow instructions during standardized testing. The paragraph B are also not satisfied because he does not have a valid verbal, performance, or full scale IQ of 59 or less. In addition, the paragraph C criteria is not satisfied because the testing was not valid for the reasons described above in finding three. Further, even if the testing was valid, paragraph C would not be satisfied because there is no evidence of deficits in adaptive functioning prior to age 22. There is no objective evidence of the claimant needing special education during school, he has no deficits in managing his activities of daily living, and he has worked at the substantial gainful level for a number of years. Moreover, the paragraph D criteria are not satisfied because there is no evidence of marked limitations in at least two of the following: activities of daily living, social functioning, or the ability to maintain concentration, persistence, or pace, or repeated episodes of decompensation. Despite the claimant's extensive testimony regarding his limited cognitive functioning and inability to get along with others, the record shows him capable of working at the substantial gainful activity for

> a number of years – sixteen years at his last job, by his own testimony. His wife also admits that he can care for his personal needs and has no problems getting along with family, friends, neighbors, or authority figures. Additionally, he displayed intact memory, attention, concentration, and fund of knowledge during examination. Thus, he does not have marked limitations in the above domains.

ECF No. 7-2 at 13-14 (citations omitted). The ALJ's analysis of Plaintiff's medical evidence and cognitive disability is thorough and complete. Also, the only evidence of record supporting Plaintiff's allegations of a cognitive disability is the fact that he left school after eighth grade; however, why he left remains unclear. ECF No. 7-2 at 31. Moreover, the ALJ properly concluded that the evidence of record relating to Plaintiff's IQ scores were invalid since the results did not come from an acceptable medical source, which Plaintiff does not dispute. Therefore, there is substantial evidence to support the ALJ's conclusion that Plaintiff did not meet the Listing requirements under 12.05C. *Kinsella*, 708 F.2d at 1059 (noting that if the ALJ's decision is supported by substantial evidence, the court will affirm).

        Notably, Plaintiff does not challenge the reasons upon which the ALJ made his decision (i.e., that Mr. Varney was an unacceptable medical source for making an IQ finding, or that there was a lack of evidence to support Plaintiff's allegations of a learning disability). Rather, Plaintiff claims that the ALJ should have sent Plaintiff to be tested by a qualified expert in regard to his learning disability since Plaintiff informed the ALJ that he could not afford additional psychological testing on his own. ECF No. 11 at 18-19 (citing *Stennett v. Comm'r of Soc. Sec.*, 476 F. Supp. 2d 665, 672 (E.D. Mich. 2007) (claiming this case "prohibits the rejection of a claimant's subjective complaints based upon his failure to seek treatment without first considering whether that failure results from an inability to afford treatment.").

"An ALJ has discretion to determine whether further evidence, such as additional medical testing or expert testimony, is necessary." *Foster*, 279 F.3d at 355 (citing 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for use to determine whether you are disabled . . . we *may* ask you to have one or more . . . mental examinations or tests.")). "The regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply to grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). Ultimately, in conducting a full inquiry into a claimant's disability, the ALJ is not required to order "a consultative examination at government expense *unless* the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Landsaw*, 803 F.2d at 214 (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977) and citing 20 C.F.R. § 404.1444) (emphasis added to "unless").

Here, the ALJ concluded that Plaintiff did not need additional testing because his IQ test results were not consistent with the evidence of record:

> [T]he claimant's IQ testing is not consistent with his extensive work history above substantial gainful activity for 17 years. Similarly, the claimant's IQ test scores are not congruent with his admitted abilities to manage his personal care, prepare complete meals, wash laundry, perform light yard work, drive, shop, manage money, watch television, care for dogs, and perform photography, as such activities suggest much better functioning than would suspect a person to have with such low IQ scores. Further, his IQ scores are not compatible with him appearing alert and oriented times three with intact memory (both recent and remote), attention, concentration, and fund of knowledge at subsequent examination, or his work history showing his ability to hold a job in the competitive work force at the level of substantial gainful activity for many years.

ECF No. 7-2 at 13 (citations omitted).  Since there was sufficient evidence regarding Plaintiff's mental impairments for the ALJ to evaluate his mental condition, the ALJ did not abuse his discretion by denying Plaintiff's request for additional testing. Therefore, the ALJ did not commit reversible error or abuse his discretion by denying Plaintiff's request for more testing at the government's expense. As such, this claim fails.

### B. Treating Physician

Plaintiff's next claim is that the ALJ improperly afforded little weight to his treating neurosurgeon (Dr. Ots).  ECF No. 11 at 19.  An ALJ affords a treating physician's opinion controlling weight when the evidence and findings are consistent with the other substantial evidence on record.  20 C.F.R. § 1527(c)(2); *see Miller*, 2016 WL 362423, at *8 (noting the weight assigned must account for the (in)consistency "among the examining sources and the record as a whole" and also consider the factors under 20 C.F.R. § 1527).  Only when the ALJ does not afford great weight to a treating source's opinion is the ALJ required to apply and conduct an analysis of the factors under (c)(2)(i) and (c)(2)(ii), and (c)(3) through (c)(6). *Id.* Moreover, an ALJ is not required to rely on medical opinions concluding that a person is, or is not, disabled since that is an issue reserved to the Commissioner.  20 C.F.R. § 1527(d).

"As a procedural requirement, the ALJ must also provide 'good reasons' for discounting the weight to be given to a treating source's opinion." *Edwards v. Comm'r of Soc. Sec.*, No. 15-3546, 2016 WL 231136, at *2 (6th Cir. Jan. 19, 2016) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013)).  These reasons must be supported by the evidence and be noted with specificity "to ensure that the rule is applied and to permit meaningful review." *Id.* (citing *Gayheart*, 710 F.3d at 376).

In his decision, the ALJ provided the following reasons for affording Dr. Ots' opinion little weight:

> [T]he undersigned gives little weight to treating surgeon Dr. Max Ots' (and/or his physician assistant's) several opinions indicating that the claimant cannot return to work, is unable to work, and is disabled. Although Dr. Ots is a highly trained surgeon who personally observed and examined the claimant over multiple treatment visits, his opinions infringe on matters reserved for the Commissioner, namely whether or not the claimant is disabled. Dr. Ots' opinions are also conclusory, as he fails to provide a function-by-function analysis of the claimant's physical capabilities. In addition, Dr. Ots' assertions are inconsistent with the objective medical record, which shows the claimant having improved diagnostic imaging findings post surgery, as well as mostly unremarkable physical examination findings as described above. Furthermore, Dr. Ots' opinion is not consistent with the claimant's and wife's own admissions that the claimant can lift thirty pounds.

ECF No. 7-2 at 17 (citations omitted). Clearly, despite Plaintiff's allegations to the contrary, the ALJ provided several "good reasons" for affording little weight to Dr. Ots' medical opinions. To start, Dr. Ots made several conclusory statements pertaining to whether Plaintiff was disabled, which is an issue exclusively reserved for the ALJ. 20 C.F.R. § 404.1527(d) (noting statements that a person is disabled or cannot work are not medical opinions, and are issues to be determined solely by the Commissioner because they are administrative findings); *see, e.g.,* ECF No. 7-7 at 115 ("He [Plaintiff] is not able to continue to work."); ECF No. 7-7 at 116, 123-24 (noting Plaintiff is "totally incapacitated."); ECF No. 7-7 at 126 ("He was not able to return to work."); ECF No. 7-7 at 127 ("I agree with his applying for disability. I do not think he can be employed."); ECF No. 7-7 at 128 ("I have considered him disabled from employment.").

In addition, the ALJ concluded that Dr. Ots' medical opinions and conclusory allegations about Plaintiff's ability to work were not expressed in terms of a function-by-function

assessment of Plaintiff's limitations since his conclusions about Plaintiff's physical abilities were made without explanation. Consequently, when determining Plaintiff's RFC, Dr. Ots' opinion was of little use. *See* SSR 96-8P (noting the RFC assessment must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."); *see generally* ECF No. 7-7 at 108-128 (Dr. Ots' medical opinions). As a result, the ALJ relied on Dr. Chang's function-by-function analysis of Plaintiff. ECF No. 7-2 at 16; ECF No. 7-3 at 2-10; ECF No. 7-7 at 131. However, Plaintiff claims that this was improper because "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'" ECF No. 11 at 20 (quoting *Gayheart*, 710 F.3d at 376).

However, "[s]tate agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence." *Hoskins v. Comm'r of Soc. Sec.*, 106 Fed. App'x 412, 415 (6th Cir. 2004); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245 n.4 (6th Cir. 2007) (quoting SSR 96-6P) ("In appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). Because the ALJ has provided "good reasons" for discounting Dr. Ots' opinion, he was not required to afford less weight to the state agency source's opinions as long as it was supported by the evidence of record. *See Helm v. Comm'r of Soc. Sec.*, 405 Fed. App'x 997, 1002 (6th Cir. 2011). Here, as the ALJ concluded, Dr. Chang's report included a function report that was consistent with the other objective evidence of record. ECF No. 7-2 at 16. As a result, the ALJ did not improperly rely on Dr. Chang's opinion regarding Plaintiff's functional capabilities.

Finally, the ALJ determined that Dr. Ots' opinion was inconsistent with the

objective medical evidence of record. *See* ECF No. 7-7 at 256, 295, 303-06, 384. "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(c)(4). Given the inconsistencies in the record with Dr. Ots' opinion that the ALJ cited to in his decision, this Court concludes that the ALJ properly afforded Dr. Ots' opinion little weight.

Overall, the ALJ provided several "good reasons" for deciding to afford Dr. Ots' opinion little weight despite Plaintiff's allegations to the contrary. Thus, Plaintiff's claim fails.

### C. RFC Study

Plaintiff's next argument is that the "ALJ committed additional and similar error by completely disregarding the RFC study because that expert was not qualified to conduct medical treatment." ECF No. 11 at 20. Plaintiff claims that the ALJ did not have substantial evidence to support his decision to afford little weight to vocational expert Dr. Ostwald's RFC study. ECF No. 11 at 20-21. Despite these allegations, Plaintiff has not set forth any authority upon which to base his position.

Under the regulations, vocational experts are not acceptable medical sources. *See* 20 C.F.R. § 404.1513. As a result, ALJ's are not required to provide "good reasons" for providing their opinions little weight, or alternatively to afford special deference to those opinions. *See* 20 C.F.R. § 404.1527(c)(2). Rather, a vocational expert is an "other source." *See* 20 C.F.R. § 404.1513(d). As such, "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." SSR 06–03p, at *6; *see also Lohr v. Comm'r of Soc. Sec.*, 559 F. Supp. 2d 784, 792

(E.D. Mich. 2008). Ultimately, "an ALJ has discretion to determine the proper weight to accord opinions from 'other sources[.]'" *Roberts v. Comm'r of Soc. Sec.*, at *5 (quoting *Engebrecht v. Comm'r of Soc. Sec.*, 572 Fed. App'x 392, 398 (6th Cir. 2014)); *see also* SSR 06-03p (noting that the opinions of "other sources" cannot establish disability).

In his decision, the ALJ stated the following about the RFC study conducted by Dr. Ostwald:

> The undersigned also gives little weight to the functional assessment performed by certified vocational expert David Ostwald indicating that the claimant can perform no more than part-time sedentary work. First, Mr. Ostwald has no medical training and is not qualified to perform functional assessments. His assessment findings and opinion are also inconsistent with the claimant's performance during [a] consultative examination a mere three months prior or during [a] treatment examination a year later, which showed the claimant displaying full range of motion in his upper and lower extremities, normal muscle tone, plantar response, coordination, and dexterity, symmetrical deep tendon reflexes, only mild difficulty heel-toe walking, no problems walking or getting on and off the examination table, and negative straight leg raise testing during examinations. Additionally, his opinion is not consistent with the claimant reporting improved back functioning post surgery (as he was able to perform light work prior to surgery) or admitting he can lift thirty pounds. Moreover, his opinion is not consistent with improved diagnostic imaging findings post surgery.

ECF No. 7-2 at 16 (citations omitted). In making this determination, the ALJ stated that the findings of Dr. Ostwald were inconsistent with the findings of Dr. Lazzara (ECF No. 7-7 at 92-96), Dr. MacFalda (ECF No. 7-7 at 170-74), Plaintiff's medical reports post-surgery (ECF No. 7-7 at 45, 78-79, 85 (noting Plaintiff had been doing well post-surgery)), and Plaintiff's Function Report admissions that he can walk a mile and lift thirty pounds (ECF No. 7-6 at 28, 36). Plaintiff fails to address these inconsistencies in his brief. *See* ECF No. 11 at 19-21.

Consequently, the ALJ's decision to afford little weight to Dr. Ostwald's RFC study is supported by substantial evidence, and Plaintiff's claim fails. *See Mullen*, 800 F.2d at 545 (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion). Therefore, Plaintiff's final claim fails.

Accordingly, the decision of the Commissioner is **AFFIRMED** and Plaintiff's request for relief is **DENIED**.

Dated: 2/17/2016

　　　　　　　　　　　　　　　　　　__/s/ *R. Allan Edgar*_____
　　　　　　　　　　　　　　　　　　HON. R. ALLAN EDGAR
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE